UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

VENICA R. EVANS,
Plaintiff,

vs.

COMMISSIONER OF
SOCIAL SECURITY,
Defendant.

Case No. 1:13-cv-85
Barrett, J.
Litkovitz, M.J.

**REPORT AND**
**RECOMMENDATION**

Plaintiff brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) for judicial review of the final decision of the Commissioner of Social Security (Commissioner) denying plaintiff's applications for disability insurance benefits (DIB) and supplemental security income (SSI). This matter is before the Court on plaintiff's Statement of Errors (Doc. 9), the Commissioner's response in opposition (Doc. 14), and plaintiff's reply memorandum (Doc. 15).

**I. Procedural Background**

Plaintiff filed applications for DIB and SSI in May 2009, alleging disability since December 12, 2003, due to peripheral vascular disease, back injury, high blood pressure, asthma, severe migraine headaches, fluid on the right knee, depression, bipolar affective disorder, borderline personality disorder, and possible post-traumatic stress disorder. These applications were denied initially and upon reconsideration. Plaintiff, through counsel, requested and was granted a *de novo* hearing before administrative law judge (ALJ) Gregory G. Kenyon. Plaintiff and a vocational expert (VE) appeared and testified at the ALJ hearing. On September 23, 2011, the ALJ issued a decision denying plaintiff's DIB and SSI applications. Plaintiff's request for review by the Appeals Council was denied, making the decision of the ALJ the final administrative decision of the Commissioner.

## II. Analysis

### A. Legal Framework for Disability Determinations

To qualify for disability benefits, a claimant must suffer from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. §§ 423(d)(1)(A) (DIB), 1382c(a)(3)(A) (SSI). The impairment must render the claimant unable to engage in the work previously performed or in any other substantial gainful employment that exists in the national economy. 42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B).

Regulations promulgated by the Commissioner establish a five-step sequential evaluation process for disability determinations:

1) If the claimant is doing substantial gainful activity, the claimant is not disabled.

2) If the claimant does not have a severe medically determinable physical or mental impairment - *i.e.*, an impairment that significantly limits his or her physical or mental ability to do basic work activities - the claimant is not disabled.

3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.

4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.

5) If the claimant can make an adjustment to other work, the claimant is not disabled. If the claimant cannot make an adjustment to other work, the claimant is disabled.

*Rabbers v. Comm'r of Soc. Sec.,* 582 F.3d 647, 652 (6th Cir. 2009) (citing §§ 404.1520(a)(4)(i)-(v), 404.1520(b)-(g)). The claimant has the burden of proof at the first four steps of the sequential evaluation process. *Id.; Wilson v. Comm'r of Soc. Sec.,* 378 F.3d 541, 548 (6th Cir. 2004). Once the claimant establishes a prima facie case by showing an inability to perform the relevant previous employment, the burden shifts to the Commissioner to show that the claimant can perform other substantial gainful employment and that such employment exists in the national economy. *Rabbers,* 582 F.3d at 652; *Harmon v. Apfel,* 168 F.3d 289, 291 (6th Cir. 1999).

### B. The Administrative Law Judge's Findings

The ALJ applied the sequential evaluation process and made the following findings of fact and conclusions of law:

1. The [plaintiff met] the insured status requirements of the Social Security Act through December 31, 2001.

2. The [plaintiff] has not engaged in substantial gainful activity since December 12, 2003, the alleged disability onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3. The [plaintiff] has the following severe impairments: lumbosacral degenerative disc disease, peripheral vascular disease, degenerative joint disease of the knees, asthma, migraine headaches, depression, posttraumatic stress disorder, and history of alcohol abuse (20 CFR 404.1520(c) and 416.920(c)).

4. The [plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the [ALJ] finds that the [plaintiff] has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) subject to the following limitations: occasional crouching, crawling, stooping, kneeling, balancing, and climbing of ramps and stairs; no climbing of ladders, ropes, and scaffolds; no work around hazards such as unprotected heights or dangerous machinery; no operation of foot controls; no concentrated exposure to respiratory irritants or

temperature extremes; limited to performing unskilled, simple, repetitive tasks; no rapid production pace work; occasional contact with coworkers, supervisors, and the public; limited to jobs involving very little, if any, change in the job duties or work setting from one day to the next; and no occupational exposure to alcohol.

6. The [plaintiff] is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).[1]

7. The [plaintiff] was born [in] . . . 1972 and was 31 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date (20 CFR 404.1563 and 416.963).[2]

8. The [plaintiff] has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the [plaintiff] is "not disabled," whether or not the [plaintiff] has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the [plaintiff]'s age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the [plaintiff] can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).[3]

11. The [plaintiff] has not been under a disability, as defined in the Social Security Act, from December 12, 2003, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Tr. 13-22).

C. **Judicial Standard of Review**

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g) and involves a twofold inquiry: (1) whether the findings of the ALJ are supported by substantial evidence, and (2) whether the ALJ applied the correct legal standards. *See Blakley v.*

---

[1] Plaintiff's past relevant work was as a nurse's aide, which was performed at the medium level of exertion; retail clerk and store cashier, which was performed at the light level of exertion; and telemarketer, which was performed at the sedentary level of exertion. (Tr. 20).
[2] Plaintiff was 39 years old on the date of the ALJ decision.
[3] The ALJ found plaintiff could perform the requirements of representative occupations such as hand packer (250 jobs locally and 21,500 jobs nationally); laborer (400 jobs locally and 46,500 jobs nationally); inspector (100 jobs locally and 13,000 jobs nationally); assembler (200 jobs locally and 27,800 jobs nationally); and surveillance system monitor (100 jobs locally and 16,200 jobs nationally).

4

*Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see also Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007).

The Commissioner's findings must stand if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citing *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance. . . ." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). In deciding whether the Commissioner's findings are supported by substantial evidence, the Court considers the record as a whole. *Hephner v. Mathews*, 574 F.2d 359 (6th Cir. 1978).

The Court must also determine whether the ALJ applied the correct legal standards in the disability determination. Even if substantial evidence supports the ALJ's conclusion that the plaintiff is not disabled, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Rabbers,* 582 F.3d at 651 (quoting *Bowen,* 478 F.3d at 746). *See also Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 545-46 (6th Cir. 2004) (reversal required even though ALJ's decision was otherwise supported by substantial evidence where ALJ failed to give good reasons for not giving weight to treating physician's opinion, thereby violating the agency's own regulations).

### D. Specific Errors

The medical findings and opinions of record have been adequately summarized in plaintiff's Statement of Errors (Doc. 9 at 3-5) and the ALJ's decision (Tr. 13-14) and will not be repeated here. Where applicable, the Court will identify the medical evidence relevant to its decision.

5

On appeal, plaintiff argues that: (1) the ALJ erred by failing to properly weigh the medical opinions of record; and (2) the ALJ erred by relying on a hypothetical question to the VE that was not supported by substantial evidence.

**1. The ALJ erred by failing to properly weigh the medical opinion evidence.**

Plaintiff contends that the ALJ erred by both failing to give "good reasons" for affording the treating provider opinions less than "controlling weight," and by giving "significant weight" to the opinions of the non-examining medical sources without providing any reasons for the weight assigned.

It is well-established that the findings and opinions of treating providers are entitled to substantial weight. "In general, the opinions of treating physicians are accorded greater weight than those of physicians who examine claimants only once." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 530-31 (6th Cir. 1997). *See also Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985) ("The medical opinions and diagnoses of treating physicians are generally accorded substantial deference, and if the opinions are uncontradicted, complete deference."). "The treating physician doctrine is based on the assumption that a medical professional who has dealt with a claimant and his maladies over a long period of time will have a deeper insight into the medical condition of the claimant than will a person who has examined a claimant but once, or who has only seen the claimant's medical records." *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994).

"Treating-source opinions must be given 'controlling weight' if two conditions are met: (1) the opinion 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques'; and (2) the opinion 'is not inconsistent with the other substantial evidence in [the] case record.'" *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013) (citing 20

6

C.F.R. § 404.1527(c)(2)). *See also Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011). If the ALJ declines to give a treating source's opinion controlling weight, the ALJ must balance the factors set forth in 20 C.F.R. §§ 404.1527(c)(2)-(6), 416.927(c)(2)-(6) in determining what weight to give the opinion. *See Gayheart,* 710 F.3d at 376; *Wilson*, 378 F.3d at 544. These factors include the length, nature and extent of the treatment relationship and the frequency of examination. 20 C.F.R. §§ 404.1527(c)(2)(i)(ii), 416.927(c)(2)(i)(ii); *Wilson*, 378 F.3d at 544. In addition, the ALJ must consider the medical specialty of the source, how well-supported by evidence the opinion is, how consistent the opinion is with the record as a whole, and other factors which tend to support or contradict the opinion. 20 C.F.R. §§ 404.1527(c)(3)-(6), 416.927(c)(3)-(6); *Gayheart,* 710 F.3d at 376; *Wilson*, 378 F.3d at 544.

"Importantly, the Commissioner imposes on its decision makers a clear duty to 'always give good reasons in [the] notice of determination or decision for the weight [given a] treating source's opinion.'" *Cole*, 661 F.3d at 937 (citing former 20 C.F.R. § 404.1527(d)(2)[4]). Those reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Id.* (citing SSR 96-2p).

The Court finds for the reasons stated below that the ALJ in this case failed to comply with the SSA's mandatory procedural requirements in weighing the assessments of plaintiff's treating physicians, and the decision to deny benefits therefore is not supported by substantial evidence.

### A. The medical opinions related to plaintiff's physical impairments

The record includes two opinions by plaintiff's treating primary care physician, Dr.

---

[4] Title 20 C.F.R. § 404.1527 was amended effective March 26, 2012. The provision governing the weight to be afforded a medical opinion that was previously found at § 404.1527(d) is now found at § 404.1527(c).

7

Andrew Cook, M.D. Dr. Cook wrote a letter dated April 29, 2011, in which he opined that plaintiff was "currently not in a condition where she can work full time. Part time (less than 4 hours a day) of light duty type work would be helpful." (Tr. 980). The ALJ gave this opinion "little weight." (Tr. 19). The ALJ discounted the opinion on the grounds Dr. Cook offered no objective findings in support of his conclusion that plaintiff could not work full-time, and the issue is one that is reserved to the Commissioner. *(Id.)*. The ALJ was entitled to reject Dr. Cook's letter opinion for these reasons. Whether a person is disabled within the meaning of the Social Security Act is an issue reserved to the Commissioner, and a physician's opinion that his patient is disabled is not "giv[en] any special significance." 20 C.F.R. §§ 404.1527(e), 416.927(e). *See also Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004) ("The determination of disability is ultimately the prerogative of the Commissioner, not the treating physician.") (citation and brackets omitted).

Dr. Cook also issued an earlier assessment dated June 3, 2010, in which he described plaintiff's functional limitations. (Tr. 728-731). The ALJ gave "little weight" to this assessment. (Tr. 19). The ALJ found as follows: "The level of limitation described in this assessment is inconsistent with the medical evidence of record as a whole and portrays the claimant as partially bedridden, which is not the case." *(Id.)*. The ALJ's decision to discount Dr. Cook's June 2010 assessment is flawed and is not supported by substantial evidence.

In deciding to discount the June 2010 opinion assessment issued by Dr. Cook, the ALJ mischaracterized the limitations Dr. Cook assessed. The ALJ found that the report portrayed plaintiff as "partially bedridden" because it stated that plaintiff "is unable to sit for more than 1.5 hours due to back pain, walk for more than 1 to 2 minutes due to hip and leg pain, and stand for more than 1 hour continuously." (Tr. 19, citing Tr. 730). However, the ALJ's summary of the

8

limitations set forth in Dr. Cook's report is not entirely accurate. Dr. Cook opined that plaintiff could not "sit for over 1.5 hours due to back pain; that walking for over 1-2 minutes causes right hip/leg pain" and that she "[can't] do stairs as a result"; and that she could stand for approximately one hour "max[imum] continuous[ly]." (Tr. 730). Dr. Cook did not indicate that he was limiting plaintiff to sitting for a total of 1½ hours in a workday or standing for a total of one hour in a workday. Nor does the report state that plaintiff is limited to walking for one to two minutes in an eight-hour workday; rather, the assessment imposes a restriction against climbing stairs as a result of hip and leg pain caused by walking for one to two minutes. Accordingly, the ALJ's interpretation of the report as imposing such extreme limitations that plaintiff was "partially bedridden" (Tr. 19) was not reasonable.

Further, the ALJ did not comply with the procedural requirements of 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2) when determining the weight to give Dr. Cook's assessment. It is not clear from the ALJ's decision whether the ALJ knew the assessment had been issued by a treating source. The ALJ did not attribute the June 2010 assessment to Dr. Cook or any other treating physician, instead referencing the assessment solely by its exhibit number and naming Dr. Cook only in connection with his April 2011 letter opinion. (Tr. 19). Even if the ALJ knew the assessment had been issued by a treating physician, the ALJ failed to consider (1) whether the opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques," and (2) whether the opinion "is not inconsistent with the other substantial evidence in [the] case record." *Gayheart*, 710 F.3d at 376. Instead, the ALJ made only a generalized statement that the assessment was not supported by the medical evidence as a whole. (Tr. 19). Nor did the ALJ give "good reasons" for the weight actually assigned. The ALJ did not consider any of the remaining factors to be balanced in determining what weight to afford the opinion of a

9

treating provider when the ALJ declines to give the opinion controlling weight. *See* 20 C.F.R. §§ 404.1527(c)(3)-(6), 416.927(c)(3)-(6). Most notably, the ALJ did not consider the length, nature and extent of the treatment relationship, which Dr. Cook reported had begun in April 2009 and had continued through the date of the assessment (Tr. 729), and whether Dr. Cook's assessment was supported by the medical records he attached to document the pertinent findings related to plaintiff's condition.

Instead of crediting Dr. Cook's opinion, the ALJ gave "significant, but limited" weight to the opinion of state agency reviewing physician Dr. Lynne Torello, M.D. (Tr. 19). Dr. Torello completed a physical RFC assessment in November 2009, in which she opined that plaintiff could perform a range of light work with occasional postural limitations and restrictions against concentrated exposure to respiratory irritants and poor ventilation. (Tr. 616-23). The ALJ stated that he was giving Dr. Torello's opinion "[s]ignificant weight" but that a range of sedentary work was more appropriate in view of plaintiff's peripheral vascular disease and back complaints. (Tr. 19).

While the opinion of a non-examining physician which is consistent with the evidence of record can constitute substantial evidence to support the Commissioner's decision (*see Atterberry v. Sec'y of Health & Human Servs.*, 871 F.2d 567, 570 (6th Cir. 1989)), the ALJ was not entitled to rely on Dr. Torello's assessment to discount Dr. Cook's opinion and find plaintiff was limited to a range of sedentary work. The ALJ did not explain how Dr. Torello's assessment, which found plaintiff capable of performing a restricted range of light work, instead supported an RFC for a restricted range of sedentary work. Nor did the ALJ provide any indication that he considered the regulatory factors to be balanced - supportability, consistency, and specialization - in determining what weight to afford the opinion of this non-examining

10

physician. *See* 20 C.F.R. §§ 404.1527(c)(3)-(6), 416.927(c)(3)-(6). The ALJ's failure to follow the governing rules "denotes a lack of substantial evidence." *Gayheart,* 710 F.3d at 379 (citing *Cole,* 661 F.3d at 937).

For these reasons, the ALJ erred when analyzing the medical evidence pertaining to plaintiff's physical impairments. The ALJ's decision to give less than controlling weight to Dr. Cook's June 2010 assessment is not supported by substantial evidence and warrants reversal of the ALJ's decision and remand for proper consideration of the assessment.

### B. The medical opinions related to plaintiff's mental impairments

The ALJ gave varying weight to three mental health assessments of record. First, the ALJ gave "significant weight" to the opinion of non-examining state agency psychologist Dr. Tasneem Khan, Ed.D., who completed a Mental RFC Assessment and Psychiatric Review Technique in October 2009 (Tr. 598-615). (Tr. 19-20). Dr. Khan opined that plaintiff had mild restrictions in her activities of daily living; moderate difficulties in maintaining social functioning; moderate difficulties in maintaining concentration, persistence or pace; and no episodes of decompensation of extended duration. (Tr. 612). Dr. Khan opined that plaintiff retained the capacity to learn and perform simple three and four step tasks in a routine and predictable environment where contact with others is occasional and superficial. (Tr. 601). The ALJ found, "This suggested level of psychological limitation is consistent with [plaintiff's] activities of daily living and is therefore given significant weight." (Tr. 20).

The ALJ gave "significant but limited weight" to a Mental Impairment Questionnaire completed by Barb Henry, APRN, in February 2010. (Tr. 20). Ms. Henry reported that plaintiff had been seen six times for psychotherapy and five times for adjustment of her medications at the Central Clinic. (Tr. 632). She rated plaintiff's current GAF as 50 and reported the highest it

11

had been during the past year was 60.[5] (*Id.*). Ms. Henry concluded that plaintiff had no limitations in activities of daily living; moderate limitations in maintaining social functioning; moderate limitations in maintaining concentration, persistence, and pace; and three or more episodes of decompensation in the previous twelve months. (Tr. 635). Ms. Henry also opined that plaintiff would miss at least three days of work per month as a result of her impairments. (Tr. 636). The ALJ indicated Ms. Henry's opinion that plaintiff would have moderate limitations in social functioning and in concentration, persistence and pace was consistent with the medical evidence of record as a whole. (Tr. 20). However, the ALJ gave "little weight" to Ms. Henry's conclusion that plaintiff would miss three days of work per month due to her mental impairments because the ALJ found nothing in the record to suggest that plaintiff would not be able to maintain "a reasonably dependable work schedule." (*Id.*).

Finally, the ALJ gave "less weight" to the opinion of Dr. Lisa Ford-Crawford, M.D.[6] (Tr. 20). Dr. Ford-Crawford completed a Mental Impairment Questionnaire in June 2011 (Tr. 1088-93), in which she indicated that plaintiff had been seen "[approximately every] month since [first] visit[.]" (Tr. 1088). Dr. Ford-Crawford opined that plaintiff had moderate limitations in activities of daily living; marked limitations in social functioning; marked limitations in maintaining concentration, persistence, and pace; and one to two episodes of decompensation

---

[5] A GAF score represents "the clinician's judgment of the individual's overall level of functioning." American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders 32 (4th ed., text rev. 2000). The GAF score is taken from the GAF scale, which "is to be rated with respect only to psychological, social, and occupational functioning." *Id.* The GAF scale ranges from 100 (superior functioning) to 1 (persistent danger of severely hurting self or others, persistent inability to maintain minimal personal hygiene, or serious suicidal act with clear expectation of death). *Id.* at 34. The DSM-IV categorizes individuals with scores of 41 to 50 as having "serious" symptoms. *Id.* at 32. Individuals with scores of 51-60 are classified as having "moderate" symptoms. *Id.*

[6] Both the ALJ and plaintiff have identified Dr. Crawford as "Fred" Crawford, M.D. It appears from the psychiatrist's signature (Tr. 1093) that this treating psychiatrist is actually Dr. Lisa Ford-Crawford, M.D., a psychiatrist employed by Greater Cincinnati Behavioral Health Services, which is a partner of Central Clinic (*see* http://www.gcbhs.com/partners.php). *See* the Ohio License Center website: https://license.ohio.gov/Lookup/SearchDetail.asp?ContactIdnt=3016750&DivisionIdnt=78&CredentialIdnt=3643340&Type=L).

within a 12-month period. (Tr. 1091). Dr. Ford-Crawford also opined that plaintiff would miss at least four days of work per month due to her mental limitations. (Tr. 1092). The ALJ discounted Dr. Ford-Crawford's opinion on the sole ground the marked limitations she assessed were inconsistent with the moderate psychological symptoms shown in the Central Clinic progress notes discussed earlier in the ALJ's opinion. (Tr. 20, citing Tr. 1055, 1060, 1066, 1085).

The ALJ did not comply with 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2) when determining the weight to assess the medical opinions related to plaintiff's mental impairments. The ALJ did not acknowledge which of these mental health sources were treating providers to whom the treating physician rule was applicable. In fact, the ALJ's analysis does not differentiate among the mental health assessments based on the nature of the patient-provider relationship. To the contrary, the ALJ applied the same analysis to the assessments issued by the treating psychiatrist, Dr. Ford-Crawford; psychiatric nurse Barb Henry,[7] who is not an "acceptable medical source" under 20 C.F.R. §§ 404.1513(a), 416.913(a), and whose opinions therefore may not be entitled to "controlling weight" under the regulations, 20 C.F.R. §§ 404.1527(d), 416.927(d) (*see* SSR 06-03p, 2006 WL 2329939, at *2 (Aug. 9, 2006); *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 540-42 (6th Cir. 2007)); and the non-examining psychologist, Dr. Khan, whose opinions likewise may not be entitled to controlling weight under the regulations.

Nor did the ALJ consider whether Dr. Ford-Crawford's opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques," and (2) "not inconsistent

---

[7]The ALJ refers to Ms. Henry as a doctor of psychology, but her signature denotes her as an "APRN" (Tr. 1053), a registered nurse who has a masters degree or higher in a specific field and who is able to prescribe medication. https://www.ncsbn.org/aprn.htm. The Ohio License Center website shows that Ms. Henry has a specialty in adult psychiatry. https://license.ohio.gov/Lookup/SearchDetail.asp?ContactIdnt=3176488&DivisionIdnt=86&Type=L.

13

with the other substantial evidence in [the] case record," which would entitle her opinion to controlling weight. *Gayheart*, 710 F.3d at 376. Rather than considering the record as a whole, the ALJ selectively parsed the medical records to find evidence of moderate limitations which he deemed to be inconsistent with the marked limitations found by Dr. Ford-Crawford. (Tr. 20). The record includes treatment notes from Central Clinic for the period from December 2009 to August 2010. (Tr. 1036-87). The ALJ acknowledged that during this treatment period, plaintiff was assessed GAF scores in the 40's, indicative of serious symptoms or impairment in social, occupational or school functioning. (Tr. 18). However, the ALJ focused on a handful of isolated treatment notes to find that plaintiff demonstrated only a moderate degree of depressive and anxiety symptoms inconsistent with these scores. (Tr. 18, citing Tr. 1066- 11/30/09 treatment note stating plaintiff reported she was doing better physically and mentally, working part time, and demonstrating better impulse control; Tr. 1060- 3/15/10 treatment note stating that plaintiff reported she felt well physically and mentally and presented as such; Tr. 1055- 7/15/10 treatment note stating that plaintiff's mood was improved, and she reported medication had helped to take the edge off; Tr. 1085- 8/11/10 treatment note reporting plaintiff's mood was improved and more stable). In so doing, the ALJ ignored treatment notes close to these dates that showed plaintiff's symptoms were not stable. (Tr. 1064- 12/9/09 treatment note reporting plaintiff's mood was depressed; Tr. 1063- 2/1/10 treatment note reporting plaintiff's impulse control and anger were worse; Tr. 1061- 3/4/10 treatment note reporting plaintiff's mood was depressed and she complained her medications were not working for her). The ALJ's selective parsing of the medical record does not substantiate his decision to discount Dr. Ford-Crawford's opinion of marked limitations and does not substantially support the ALJ's finding that plaintiff's limitations were only moderate. *See Boulis-Gasche v. Comm'r of Soc. Sec.*, 451 F. App'x 488,

494 (6th Cir. 2011) (noting ALJ's conclusion that "some unspecified improvement in Plaintiff's mood cured any anxiety or depression" appeared to be "grounded in a myopic reading of the record combined with a flawed view of mental illness"); *Germany-Johnson v. Commissioner of Social Sec.*, 313 F. App'x 771, 777 (6th Cir. 2008) (substantial evidence did not support ALJ's decision where the ALJ failed to explain why he discounted the finding of the treating physician and "was selective in parsing the various medical reports").

Assuming Dr. Ford-Crawford's opinion was entitled to less than controlling weight, the ALJ did not give "good reasons" for the weight afforded her opinion. The ALJ did not examine the treating psychiatrist's specialty; the length, nature and extent of the treatment relationship and the frequency of examination; how consistent the opinion was with the record as a whole; and other factors which tend to support or contradict the opinion. 20 C.F.R. §§ 404.1527(c)(3)-(6), 416.927(c)(3)-(6); *Gayheart,* 710 F.3d at 376; *Wilson*, 378 F.3d at 544.

Nor did the ALJ provide any indication that he considered the regulatory factors to be balanced in determining what weight to afford the opinion of the non-examining psychologist, Dr. Khan. *See* 20 C.F.R. §§ 404.1527(c)(3)-(6), 416.927(c)(3)-(6). Plaintiff's counsel accurately notes that in the Commissioner's response to the Statement of Errors, counsel for the Commissioner has carefully reviewed the opinions of the non-examining state agency psychologist and has proffered a number of arguments as to why that opinion is better supported than the opinion of plaintiff's treating psychiatrist; however, the ALJ did not undertake a similar analysis in his hearing decision. (Doc. 15). The Court cannot accept the Commissioner's post-hoc rationalization in support of the ALJ's decision. Where the ALJ has failed to weigh a treating physician's opinion in accordance with Social Security's procedural regulations, the Court cannot excuse the failure even though there may be sufficient evidence in the record that

15

supports the ALJ's decision. *See Wilson*, 378 F.3d at 546 ("A court cannot excuse the denial of a mandatory procedural requirement protection simply because, as the Commissioner urges, there is sufficient evidence in the record for the ALJ to discount the treating source's opinion. . . .") (internal citations omitted). The ALJ in this case failed to articulate a valid basis for crediting Dr. Khan's opinion over that of Dr. Ford-Crawford. The ALJ's failure to follow the governing rules "denotes a lack of substantial evidence." *Gayheart*, 710 F.3d at 379 (citing *Cole,* 661 F.3d at 937).

### C. Conclusion

Reversal of the ALJ's decision for failure to comply with the agency's procedural rules when weighing the medical opinion evidence related to plaintiff's physical and mental impairments is warranted. Plaintiff's first assignment of error should be sustained.[8]

### III. This matter should be reversed and remanded for further proceedings.

This matter should be reversed and remanded pursuant to Sentence Four of § 405(g) for further proceedings consistent with this Report and Recommendation. All essential factual issues have not been resolved in this matter, nor does the current record adequately establish plaintiff's entitlement to benefits as of her alleged onset date. *Faucher v. Sec. of HHS*, 17 F.3d 171, 176 (6th Cir. 1994). Accordingly, this matter should be reversed and remanded to the Commissioner to reweigh the opinions of plaintiff's treating physicians and the other medical providers of record in accordance with the standards set forth herein, and to obtain additional medical testimony and vocational evidence as warranted.

---

[8] In view of the Court's conclusion, it is not necessary to address plaintiff's second assignment of error that the ALJ relied on vocational testimony that was not supported by substantial evidence because it failed to accurately portray plaintiff's physical and mental impairments. (Doc. 9 at 18-20). Because the ALJ's RFC finding is not supported by substantial evidence, the ALJ could not rely on answers to hypothetical questions that restated his unsupported RFC finding. *See White v. Commissioner of Social Sec.*, 312 F. App'x 779, 789 (6th Cir. 2009) (ALJ erred in relying on answer to hypothetical question because it simply restated RFC which did not accurately portray claimant's physical and mental impairments).

...

**IT IS THEREFORE RECOMMENDED THAT:**

The decision of the Commissioner be **REVERSED** and **REMANDED** for further proceedings pursuant to Sentence Four of 42 U.S.C. § 405(g).

Date: 1/29/14

Karen L. Litkovitz
United States Magistrate Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

VENICA R. EVANS,
Plaintiff,

vs.

COMMISSIONER OF
SOCIAL SECURITY,
Defendant.

Case No. 1:13-cv-085
Barrett, J.
Litkovitz, M.J.

NOTICE

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. This period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas* v. *Arn,* 474 U.S. 140 1985); *United States* v. *Walters,* 638 F.2d 947 (6th Cir.